UNITED STATES DISTRICT COURT

for the

NORTHERN DISTRICT OF NEW YORK

```
U.S. DISTRICT COURT - N.D. OF N.Y.
         FILED
       DEC 29 2009
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse
```

------------------------------------)
JEREMY ZIELINSKI, Plaintiff,        )
                                    )
      -against-                     )
                                    )
BRIAN FISCHER, Commissioner, NYS Dept. )
of Correctional Services, and       )
                                    )
WILLIAM F. HULIHAN, Superintendent, Mid-)
State Correctional Facility, and    )
                                    )
LILLY PEARSON, a Psychologist at Mid-)
State Correctional Facility, and    )
                                    )
D. SILVERMAN, a Social Worker at Mid-)
State Correctional Facility, and    )
                                    )
GEORGE SERVICE, a Supervising       )
Corrections Counselor at Mid-State  )
Correctional Facility, and          ) COMPLAINT - 42 USC § 1983
                                    )
RICHARD WOLANSKI, a Corrections     ) Civ. Action No._____
Counselor at Mid-State Correctional )
Facility, and                       ) Jury Trial Demanded
                                    )
SUSAN NEAFACH, a Corrections Counselor )      9:09-CV-1444
at Mid-State Correctional Facility, and )
                                    )
SCOTT SCIALDO, a Corrections Counselor )
at Mid-State Correctional Facility, and )
                                    )
T. DOBBINS, a Correction Officer at )
Mid-State Correctional Facility,    )
                                    )
individually and in their official  )
capacities, Defendants.             )
------------------------------------)

The plaintiff, JEREMY ZIELINSKI, Pro Se, alleges:

### JURISDICTION

1.   This is an action authorized by 42 U.S.C. § 1983 to redress

the deprivation, under color of state law, of rights guaranteed by

the First and Fourteenth Amendments to the U.S. Constitution and

Article 1 §§ 6 and 8 of the New York State Constitution.  Plaintiff's

1

claims for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §§ 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

2. Plaintiff JEREMY ZIELINSKI is and was at all times mentioned herein a prisoner of the State of New York in the custody of the New York State Department of Correctional Services ("DOCS").

3. The plaintiff was confined in Mid-State Correctional Facility in Marcy, NY from January 30, 2009 to on or about October 7, 2009, and currently is confined in Riverview Correctional Facility in Ogdensburg, NY.

4. Defendant BRIAN FISCHER is the Commissioner of DOCS. He is legally responsible for the overall operation of DOCS and each facility under its jurisdiction, including Mid-State and Riverview Correctional facilities.

5. Defendant WILLIAM F. HULIHAN is the Superintendent of Mid-State Correctional Facility. He is legally responsible for the overall operation of that prison and for the welfare of all the inmates at that prison.

6. Defendant LILLY PEARSON is a psychologist employed by DOCS assigned to Mid-State Correctional Facility ("MSCF"). She is legally responsible for reviewing, approving and modifying treatment plans for inmates participating in the Sex Offender

Counseling and Treatment Program ("SOCTP") administered at MSCF pursuant to N.Y. Correction Law § 622.

7. Defendant D. SILVERMAN is a licensed clinical social worker employed by DOCS assigned to MSCF. Under the clinical supervision of defendant PEARSON he administers SOCTP treatment plans to inmates participating in the SOCTP.

8. Defendant GEORGE SERVICE is a Supervising Corrections Counselor employed by DOCS assigned to MSCF. Under the clinical supervision of defendant PEARSON he supervises other corrections counselors and administers SOCTP treatment plans to inmates participating in the SOCTP.

9. Defendant RICHARD WOLANSKI is a Corrections Counselor employed by DOCS assigned to MSCF. Under the clinical supervision of defendant PEARSON and the supervision of defendant SERVICE he administers SOCTP treatment plans to inmates participating in the SOCTP.

10. Defendant SCOTT SCIALDO is a Corrections Counselor employed by DOCS assigned to MSCF. Under the clinical supervision of defendant PEARSON and the supervision of defendant SERVICE he administers SOCTP treatment plans to inmates participating in the SOCTP.

11. Defendant SUSAN NEAFACH is a Corrections Counselor employed by DOCS assigned to MSCF. Under the clinical supervision of defendant PEARSON and the supervision of defendant SERVICE she administers SOCTP treatment plans to inmates participating in the SOCTP.

12. Defendant T. DOBBINS is a Correction Officer employed by DOCS assigned to MSCF.

13. Each defendant is sued individually and in his or her official capacity. At all times mentioned herein each defendant acted under

color of state law.

## FACTS

14. On January 30, 2009 the plaintiff was transferred to MSCF to participate in the SOCTP. The SOCTP is a therapeutic program for inmates convicted of sexual offenses administered at MSCF pursuant to N.Y. Corr. L. § 622.

15. The SOCTP consists of two "levels." "Level 1" provides inmates with general information and terminology, but does not deal with inmates' individual offenses, and is supposed to last eight to twelve (8-12) weeks. "Level 2" provides offense-specific counseling, and has no set length, but inmates are required to participate in the SOCTP for a minimum of six (6) months.

16. Beginning in late April, 2009 the plaintiff began investigating the legality of several practices which took place in the SOCTP, including prohibiting participants from speaking in any way for long periods of time (called "Time of Silence" by staff), restricting the use of facility and state-wide privileges, arbitrary censorship of television programs, movies and books, and disciplining inmates for violations of unwritten rules without hearings. The plaintiff, after reviewing applicable regulatory, statutory and case law and DOCS policies and procedures, determined they were largely without authority and unlawful.

17. Defendants SERVICE, PEARSON, SILVERMAN, NEAFACH, WOLANSKI, SCIALDO and DOBBINS, however, maintained that they had written authority to justify all of their practices.

18. Between April, 2009 and June, 2009 the plaintiff informally sought copies of the alleged written authority unsuccessfully from the defendants.

19. On June 18, 2009 the plaintiff filed a Freedom of Information Law request seeking copies of the rules or regulations and records governing the censorship and restriction-of-privileges practices, or in the alternative a certification that none existed.

20. After several letters between the plaintiff and the facility FOIL officer which did not produce any records, the facility FOIL officer delegated the matter to defendant SERVICE, who likewise did not provide records.

21. The facility FOIL officer and defendant SERVICE did, however, refer to non-existent records and documents.

22. The plaintiff filed an administrative appeal to defendant FISCHER's office of the FOIL denials which was never responded to.

23. On or about August 10, 2009 the plaintiff informed defendant SERVICE that judicial review would be sought if the denial was not corrected and records provided.

24. On or about August 15, 2009 the plaintiff was elected to the Inmate Liaison Committee - an elected body of inmates that represents the population with administration to resolve disputes - on the understanding that he would immediately raise the issue of the unlawful practices with facility administration, including defendant HULIHAN.

25. On August 17, 2009 the plaintiff filed a petition in Oneida County Supreme Court (<u>ZIELINSKI v. FISCHER and SERVICE</u>, Index No. CA-2009-002425) to compel production of records under FOIL. The plaintiff informed defendant SERVICE of this filing on or about August 18, 2009.

26. On August 19, 2009 the plaintiff observed defendant NEAFACH opening and reading already-inspected incoming inmate mail on his

housing unit. The plaintiff asked defendant NEAFACH why she was doing so and she denied that she was reading inmate mail, and the conversation ended without incident.

27. On August 20, 2009 defendant NEAFACH issued a "Counseling Notification" and disciplined the plaintiff for "Questioning staff and acting as the group's spokesman" and ordered him in writing to "Avoid acting as the lawyer in the dorm."

28. The plaintiff had been promoted to Level 2 on or about July 20, 2009. The refusal to promote the plaintiff from the "8-12 weeks" Level 1 for 5 months was retaliation for other written complaints, and evidence supports a claim for retaliation for that, though the refusal to promote does not form a part of this claim.

29. On August 20, 2009 defendant WOLANSKI attempted to discipline the plaintiff without a hearing for allegedly violating an unwritten rule. The plaintiff denied guilt, and defendant WOLANSKI threatened further discipline for not admitting guilt, which was standard practice. The plaintiff requested and received permission to speak to him privately, and requested that all disciplinary-action-without-hearing practices cease, making clear that the request was being made under the protection of N.Y. Correction Law §§ 138(4) and (5). (Those sections prohibit disciplining inmates for making policy-change requests, and prohibit disciplinary action for violations of unwritten rules, respectively.) In retaliation, defendant WOLANSKI threatened to take disciplinary action against the plaintiff for "causing a disturbance."

30. The plaintiff filed an inmate grievance regarding defendant WOLANSKI's attempt at disciplinary action and threats the same day.

31. On August 21, 2009 defendants WOLANSKI, NEAFACH and SILVERMAN

threatened to demote the plaintiff to Level 1 or expel him from the SOCTP, cause a loss of good time, and cause a civil confinement proceeding to be instituted, unless the plaintiff withdrew his FOIL request and stopped "challenging the program."

32. The plaintiff filed an inmate grievance regarding the threats the same day.

33. The plaintiff also met with the Inmate Liaison Committee Executive Board on August 21, 2009 to provide them with documents to address the unlawful practices. While the plaintiff was waiting to attend that meeting, he observed defendant WOLANSKI discussing with an unknown correction officer how to author and issue an inmate misbehavior report that "will stick no matter what he grieves." The plaintiff asked for permission to speak to defendant WOLANSKI and then told him that any false misbehavior reports would result in grievances and judicial action.

34  On August 25, 2009 the plaintiff filed an inmate grievance challenging the restriction-of-privilege practices. No longer fearful of spearheading, several other inmates on the plaintiff's housing unit filed similar grievances the same week.

35. On August 26, 2009 the plaintiff received a false inmate misbehavior report issued by defendant WOLANSKI that referred to unwritten and non-existent rules and cited the plaintiff for refusing a direct order and causing a disturbance. The alleged misconduct was that the plaintiff did not give the "proper response" to the accusation on August 20, 2009. Defendant WOLANSKI made a false statement that a correction officer was present. At the hearing the officer denied being present but the plaintiff was found guilty. Upon administrative appeal, which properly raised the issue

of the alleged misconduct not being prohibited in writing, defendant HULIHAN upheld the misbehavior report.

36. The language of the false misbehavior report followed exactly the conversation the plaintiff observed defendant WOLANSKI having with the unknown correction officer on August 21, 2009.

37. On August 28, 2009 defendants SILVERMAN, SERVICE, NEAFACH and SCIALDO held a meeting where they threatened the plaintiff with demotion, expulsion, loss of good time and civil confinement again. Defendant SILVERMAN made an additional threat to make false entries in the plaintiff's SOCTP records which "will be a black mark that will follow you [the plaintiff] around for the rest of your life." When the plaintiff refused again to withdraw his complaints and stated he would be filing an additional grievance regarding the threats, the defendants demoted the plaintiff to Level 1.

38. The plaintiff filed an inmate grievance regarding the demotion and threats on September 1, 2009.

39. The plaintiff had signed an affidavit verifying another inmate's claims of sexual harassment against defendant DOBBINS on August 26, 2009. The plaintiff had previously filed grievances complaining of harassment by him in April, 2009, to which defendant DOBBINS retaliated by issuing a false misbehavior report for "threats" and "harassment" which was dismissed at a hearing.

40. On August 28, 2009 defendant DOBBINS issued two false misbehavior reports against the plaintiff, alleging that he had caused a disturbance and refused several direct orders. When the plaintiff spoke to defendant DOBBINS about the misbehavior report on August 30, 2009, defendant DOBBINS admitted that the misbehavior reports were issued in retaliation for the plaintiff's actions in

assisting the other inmate, and in retaliation for "all of the problems" allegedly caused by the FOIL requests and grievances, and in retaliation for his belief that the plaintiff was responsible for the other inmate grievances filed the week of August 25, 2009.

41. Defendant DOBBINS threatened to issue additional false misbehavior reports unless the plaintiff abandoned his complaints which would result in six (6) months SHU time, expulsion from the SOCTP, and loss of good time. He qualified his threats, however, that if the plaintiff pled guilty he would speak to the hearing officer "off-the-record" to mitigate the penalties.

42. On August 30, 2009 the plaintiff was issued another misbehavior report for talking to the inmate he had signed the affidavit for by a different officer. Defendant DOBBINS made the same offer about pleading guilty in mitigation of penalty regarding this misbehavior report.

43. At the hearings on September 1, 2009 for the misbehavior reports, defendant DOBBINS' misbehavior reports were consolidated, the plaintiff pled guilty after speaking to the hearing officer off-the-record about the entire situation, and the hearing officer imposed a total penalty of 30 days keeplock for all three reports.

44. The plaintiff filed administrative appeals of the misbehavior reports to defendant HULIHAN, but no response was received.

45. During the plaintiff's participation in the SOCTP, several other inmates received thirty (30) days keeplock with no program consequences.

46. On September 1, 2009 defendant SERVICE summarily expelled the plaintiff from participation in the SOCTP, allegedly based on the thirty days keeplock.

47.  DOCS' SOCTP Policies and Procedures manual requires that a formal "Retention Review Committee" hearing take place if an inmate is to be demoted or expelled from the SOCTP.  No such hearing took place before defendant SERVICE expelled the plaintiff.  The SOCTP Policies and Procedures manual and N.Y. Correction Law § 622 both require that defendant PEARSON review and approve all changes to an inmate's treatment plan, including demotion or expulsion, but she did not participate in any way on August 21, 2009 or August 28, 2009 or in defendant SERVICE's summary expulsion.

48.  Defendants SERVICE and NEAFACH made numerous false entries in the plaintiff's "Chronological Entry Sheet" records to justify the expulsion, which correlated with the plaintiff's filing of his FOIL request and grievances.  Defendant SERVICE entered on September 1, 2009 that the plaintiff had been seen at "retention" three times, had been transferred to three different dorms, and was not focused on SOCTP work.  On July 16, 2009 he entered "[I]nmate has been argumentative and tries to be a lawyer for other inmates instead of focusing on his work."  The plaintiff had filed a written complaint to defendant HULIHAN regarding defendant NEAFACH's order to "Avoid acting as the lawyer in the dorm."  She characterized it as "a notarized essay regarding [her] errors in thinking and the department's maltreatment toward inmates" and entered that she told the plaintiff to "stop disrespecting staff and conduct himself according to the program standards and norms."  Defendant SERVICE entered on August 28, 2009 that the complaint was a "poor inappropriate response" and an attempt to "circumvent the system."  Defendant SERVICE also entered on September 1, 2009 that he had ordered the plaintiff on August 28, 2009 to not receive "any more"

misbehavior reports. Upon information and belief, which further investigation and discovery will likely uncover evidence of, other false or misleading entries were made in the plaintiff's inmate records.

49. The plaintiff filed an inmate grievance regarding the expulsion on September 3, 2009 seeking reinstatement and damages.

50. The facility Law Library denied seven requests to photocopy the Order to Show Cause and Petition from the Onieda County Supreme Court for service upon defendants SERVICE and FISCHER, necessitating a request for extension and delay of the suit. Once photocopies were finally obtained and the papers were served, the defendants ceased or resolved most of the practices that were at issue and issued a new MSCF manual to govern the SOCTP.

51. The plaintiff's grievances of August 20, 2009, August 21, 2009, September 1, 2009 and September 3, 2009 should have been processed under the "expedited procedure" under 7 NYCRR § 701.8 for harassment grievances as defined in 7 NYCRR § 701.2(e), i.e. "those grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate," but they were processed as standard grievances and denied by the Inmate Grievance Resolution Committee. The August 25, 2009 grievance was also denied. The plaintiff appealed all denials to defendant HULIHAN.

52. Defendant HULIHAN denied the plaintiff's grievances on September 29, 2009 and September 30, 2009. Defendant SERVICE, during the investigation, stated that he "instructed [the plaintiff] to put the same amount of effort into completing the program as he applies to his complaints about the program."

53. The plaintiff appealed the denials to CORC on October 16, 2009.

To date the plaintiff has still not received any appeal decisions, despite 7 NYCRR § 701.5(d)(3)(ii)'s mandate that CORC respond to appeals within 30 days and despite requests on December 4, 2009 and December 11, 2009 for a date on which a response can be expected. The CORC has failed or refused to timely answer the plaintiff's appeals, and no further administrative remedies are available.

54. An unwritten but automatic rule exists within DOCS that any inmate who is expelled from the SOCTP has all of their good time withheld. On December 15, 2009 a Time Allowance Committee hearing was held, inexplicably one month before DOCS regulations specify, to withhold the plaintiff's good time based on the expulsion. At the hearing the issue of the expulsion being unlawful was raised and rejected as irrelevant.

55. As a result of the defendants' unlawful actions, the plaintiff has suffered severe headaches, loss of sleep, nightmares, and severe and prolonged emotional distress due to fear and knowledge that the expulsion will result in extended imprisonment and possible classification as a higher risk level under New York's Sex Offender Registration Act (necessitating lifetime registration instead of 20 years), and due to fear that the defendants will follow through on their threats to institute a civil confinement hearing and cause the plaintiff's indefinite confinement.

56. As a further result of the defendants' unlawful actions, the plaintiff was transferred to another facility approximately 150 miles further from his home and family than MSCF, and the plaintiff has suffered a loss of, and damage to, family ties and relationships, including with his 4-year-old son, due to the

significantly increased difficulty and expense of visitation.

57. As a further result of the defendants' unlawful actions, the plaintiff was expelled from the mental health counseling aspects of the SOCTP without any transitional counseling and has been denied the ability to receive counseling for his crimes, causing severe and prolonged emotional distress.

58. As a further result of the defendants' unlawful actions, the plaintiff has refrained from filing legitimate grievances and complaints out of fear that further retaliation will result.

## CLAIMS FOR RELIEF

59. The plaintiff realleges and incorporates by reference Paragraphs 1 through 58.

60. Defendant WOLANSKI's attempt to discipline the plaintiff for an alleged violation of an unwritten rule without a hearing and his threats on August 20, 2009, and his subsequent issuance of a false misbehavior report against the plaintiff, were motivated by or substantially based upon the plaintiff's use of FOIL requests, institution of judicial proceedings, association with the Inmate Liaison Committee, filing of inmate grievances, refusal to admit guilt to the false allegation and requests for changes to institutional policies, rules or regulations; in violation of the plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution, Article 1 §§ 6 and 8 of the New York State Constitution, N.Y. Correction Law §§ 138(4) and (5), and 7 NYCRR § 250.2(f).

61. Defendants NEAFACH, WOLANSKI and SERVICE's action of holding a meeting on August 21, 2009 to threaten the plaintiff was

motivated by or substantially based upon the plaintiff's use of FOIL requests, institution of judicial proceedings, association with the Inmate Liaison Committee, filing of inmate grievances, refusal to admit guilt to defendant WOLANSKI's false allegations and requests for changes to institutional policies, rules or regulations; and constituted a conspiracy or an abuse of discretion jointly and severally; in violation of the plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution, Article 1 §§ 6 and 8 of the New York State Constitution, and N.Y. Correction Law § 138(4).

62. Defendants SILVERMAN, NEAFACH, SERVICE and SCIALDO's actions of holding a meeting on August 28, 2009 to threaten the plaintiff and demoting him to Level 1 of the SOCTP were motivated by or substantially based upon the plaintiff's use of FOIL requests, institution of judicial proceedings, association with the Inmate Liaison Committee, filing of inmate grievances, refusal to admit guilt to defendant WOLANSKI's false allegations and requests for changes to institutional policies, rules or regulations; and constituted a conspiracy or an abuse of discretion jointly and severally; in violation of the plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution, Article 1 §§ 6 and 8 of the New York State Constitution, N.Y. Correction Law § 138(4), and the DOCS SOCTP Policies and Procedures manual.

63. Defendant DOBBINS' issuance of two false misbehavior reports against the plaintiff on August 28, 2009 and subsequent threats on August 30, 2009 were motivated by or substantially based upon the plaintiff's use of FOIL requests, institution of judicial proceedings, association with the Inmate Liaison Committee, filing

of inmate grievances and written verification of another inmate's claims of sexual harassment by defendant DOBBINS; in violation of the plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution, Article 1 §§ 6 and 8 of the New York State Constitution, N.Y. Correction Law § 138(4), and 7 NYCRR § 250.2(f).

64. Defendant SERVICE's action of expelling the plaintiff from the SOCTP on September 1, 2009 without a hearing and without pursuing alternatives to expulsion was motivated by or substantially based upon the plaintiff's use of FOIL requests, institution of judicial proceedings, association with the Inmate Liaison Committee, filing of inmate grievances, refusal to admit guilt to defendant WOLANSKI's false allegations and requests for changes to institutional policies, rules or regulations; and constituted an abuse of discretion or, to the extent that any other defendants directly participated in the expulsion, constituted a conspiracy or an abuse of discretion jointly and severally; in violation of the plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution, Article 1 §§ 6 and 8 of the New York State Constitution, N.Y. Correction Law § 138(4), and the DOCS SOCTP Policies and Procedures manual.

65. Defendant SERVICE's action of expelling the plaintiff from the SOCTP on September 1, 2009 for receiving 30 days keeplock while allowing other inmates who received identical penalties to continue participation with no program consequences once released from keeplock violated the plaintiff's rights as a class of one under the Fourteenth Amendment to the U.S. Constitution and Article 1 §§ 6 and 11 of the New York State Constitution.

66. Defendants SERVICE, SILVERMAN, NEAFACH and SCIALDO's actions

of altering the plaintiff's SOCTP treatment plan by demoting and expelling him without the involvement of defendant PEARSON violated N.Y. Correction Law § 622; in violation of the plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution, Article 1 § 6 of the New York State Constitution, N.Y. Correction Law § 622, and the DOCS SOCTP Policies and Procedures manual.

67. Defendants SERVICE, SILVERMAN and NEAFACH made deliberately false statements or recklessly disregarded the truth in statements entered into the plaintiff's inmate records which were material to the demotion and expulsion; in violation of the plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution, and Article 1 § 6 of the New York State Constitution.

68. Defendant SERVICE's actions render him liable as a supervisor for the constitutional violations of his subordinates as he directly participated in the violations, failed to remedy them after being informed of them by report or appeal, created a policy or custom under which the violations occurred, was grossly negligent in supervising his subordinates who committed the violations, and/or was deliberately indifferent to the rights of the plaintiff and others by failing to act on information that constitutional rights were being violated.

69. Defendant PEARSON's actions render her liable as a supervisor for the constitutional violations of her subordinates as she directly participated in the violations, failed to remedy them after being informed of them by report or appeal, created a policy or custom under which the violations occurred, was grossly negligent in supervising her subordinates who committed the violations, and/or was deliberately indifferent to the rights of

the plaintiff and others by failing to act on information that constitutional rights were being violated.

70. Defendant HULIHAN's failure or refusal to overturn the false misbehavior reports, and his failure or refusal to readmit the plaintiff into the SOCTP, violated the plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution and Article 1 § 6 of the New York State Constitution; and render him liable as a supervisor for the constitutional violations of his subordinates as he directly participated in the violations, failed to remedy them after being informed of them by report or appeal, created a policy or custom under which the violations occurred, was grossly negligent in supervising his subordinates who committed the violations, and/or was deliberately indifferent to the rights of the plaintiff and others by failing to act on information that constitutional rights were being violated.

71. Defendant FISCHER's failure or refusal to readmit the plaintiff into the SOCTP violated the plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution and Article 1 § 6 of the New York State Constitution; and renders him liable as a supervisor for the constitutional violations of his subordinates as he directly participated in the violations, failed to remedy them after being informed of them by report or appeal, created a policy or custom under which the violations occurred, was grossly negligent in supervising his subordinates who committed the violations, and/or was deliberately indifferent to the rights of the plaintiff and others by failing to act on information that constitutional rights were being violated.

72. The defendants' retaliatory actions were taken with the

knowledge and intent that the plaintiff would inevitably be transferred to another facility, lose good time, and suffer severe and prolonged emotional distress as results; in violation of the plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution, Article 1 §§ 6, 8 and 11 of the New York State Constitution, and N.Y. Correction Law § 138(4).

73. The defendants were motivated by evil motive or intent or acted with reckless or callous indifference to clearly-established federally- and state-protected rights of the plaintiff and others.

74. The plaintiff has no plain, adequate and complete remedy at law to redress the wrongs described herein. The plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the relief sought herein.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays that this Court enter judgment granting the plaintiff:

A. A declaration that the acts and omissions of the defendants described herein violated the plaintiff's rights under the U.S. Constitution, the New York State Constitution, and the Laws of the State of New York;

B. A preliminary and permanent injunction directing defendant FISCHER to reinstate the plaintiff to participation in the SOCTP forthwith with full credit for his previous participation at MSCF;

C. A preliminary and permanent injunction prohibiting the defendants from taking any adverse action against the plaintiff based in any way upon the expulsion from the SOCTP at MSCF;

D. A preliminary and permanent injunction directing the defendants to expunge all false and misleading entries, and all

references to the demotion and expulsion, from the plaintiff's inmate records;

E.  Compensatory damages of $5,000 against each defendant or $45,000 jointly and severally;

F.  Punitive damages of $7,500 against each defendant or $67,500 jointly and severally;

G.  Nominal damages;

H.  Plaintiff's costs in this action;

I.  A jury trial on all issues triable by jury; and

J.  Such other and further relief as this Court deems just and proper.

Respectfully submitted,

Date: 12/23/2009

JEREMY ZIELINSKI
Plaintiff, Pro Se
Riverview Corr. Fac.
DIN: 06-A-4883
P.O. Box 247
Ogdensburg, NY 13669

## VERIFICATION

I, JEREMY ZIELINSKI, the plaintiff herein, declare under penalty of perjury that I have read the foregoing complaint and know the contents thereof, and that all matters stated therein are True and Correct, except as to matters alleged upon information and belief, and as to those matters I believe them to be true.

Executed at Ogdensburg, NY on 12/23/2009.

JEREMY ZIELINSKI